UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHALIL FAHAD (A-212-400-130),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al,

Respondents.

No. 1:26-cv-05659-TLN-CSK

ORDER and FINDINGS & RECOMMENDATIONS

Petitioner Khalil Fahad (A-212-400-130), a native and citizen of Iraq who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] On February 27, 2013, petitioner entered the United States as a refugee. On January 8, 2020, an immigration judge ordered petitioner removed. On July 8, 2021, petitioner was placed on an Order of Supervision. On April 3, 2026, petitioner was taken into the custody of U.S. Immigration and Customs Enforcement ("ICE"). This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released.

///

[1] Petitioner is proceeding in forma pauperis. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Iraq. (ECF No. 8 at 7.) On February 27, 2013, petitioner entered the United States as a refugee. (Id. at 9.) On January 8, 2020, an immigration judge ordered petitioner removed to Iraq. (Id. at 12-14.) On January 15, 2020, petitioner filed a Notice to Appeal Immigration Decision for fear of torture if returned to Iraq. (Id. at 9.) On March 19, 2021, the Executive Office for Immigration Review dismissed the appeal. (Id. at 18-20.) On July 8, 2021, petitioner was placed on an Order of Supervision. (Id. at 9.) Petitioner has a criminal history and has been convicted of different charges. (Id.) Respondents state that, according to their records, petitioner does not have any Petition for Review pending with the Ninth Circuit. (Id. at 2.) On April 3, 2026, petitioner was taken into the custody of ICE after an outside agency made contact with petitioner. (Id. at 8.)

## II. PROCEDURAL BACKGROUND

On July 20, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel. (ECF Nos. 1-3.) On July 22, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings. (ECF No. 5.) On August 3, 2026, respondents timely filed an opposition to the petition. (ECF No. 8.) On August 17, 2026, petitioner filed a reply. (ECF No. 9.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV. DISCUSSION**

Petitioner challenges his continued detention based on the violation of the following: (1) petitioner's continued detention violates the Fifth Amendment due process clause (claim one); (2) violation of the Fifth Amendment, 8 U.S.C. § 1231, Convention Against Torture, Implementing Regulations and the Administrative Procedures Act (claim two); (3) punitive third-country banishment violates the Fifth and Eighth Amendments (claim three); and (4) violation of the Fifth Amendment due process clause, 8 C.F.R. § 241.13 and the Administrative Procedures Act (claim four). (ECF No. 1 at 13-18.) In the opposition, respondents claim that petitioner is detained under 8 U.S.C. § 1231(a)(6) to effectuate the final order of removal. (ECF No. 8 at 1.) Respondents also appear to claim that petitioner is detained pursuant to 8 C.F.R. § 241.13(i)(2). (Id. at 2.)

**A. Claim Four**

In claim four, petitioner argues that his continued detention violates the Fifth Amendment Due Process Clause, 8 C.F.R. § 241.13 and the Administrative Procedures Act. (ECF No. 1 at 16-18.) In particular, petitioner argues that his detention violates 8 C.F.R. § 241.13(i)(2) because (1) ICE detained him without proof that there is a significant likelihood that he will be removed soon; (2) ICE failed to notify petitioner of the reasons for the revocation of his release; and (3) ICE failed to provide him with an informal interview promptly upon his return to custody. (Id. at 16-17.)

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90-day removal period has passed

where petitioner was ordered removed on January 8, 2020 and on March 19, 2021, the Executive Office for Immigration Review dismissed petitioner's appeal from the immigration judge's decision. (ECF No. 8 at 12-14, 18-20.) Respondents do not dispute that petitioner was most recently released under an Order of Supervision on July 8, 2021. (Id. at 2.)

Citing Zadvydas, respondents appear to argue that petitioner's detention under § 1231(a)(6) is presumptively reasonable because petitioner has been detained less than six months. (Id. at 2.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). It is clear that petitioner has been detained beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a

significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

In the opposition, respondents also appear to claim that petitioner is detained pursuant to 8 C.F.R. § 241.13(i)(2) because his Order of Supervision was revoked on account of changed circumstances that made petitioner's removal significantly likely in the reasonably foreseeable future.[2] (ECF No. 8 at 2.) Respondents argue that petitioner's detention under 8 C.F.R. § 241.13(i)(2), which is less than six months, is presumptively reasonable under 8 C.F.R. § 241.13(j), which provides for a custody redetermination review process for noncitizens detained beyond six months. (Id. at 3.) This argument is unpersuasive. Section 241.13(j) provides for a custody redetermination review process for noncitizens detained under 8 C.F.R. § 241.13(i) beyond six months. Because petitioner challenges his initial detention under 8 C.F.R. § 241.13(i)(2) and has not been detained six months, 8 C.F.R. § 241.13(j) is not relevant.

Respondents do not address petitioner's three arguments regarding why his detention violates 8 C.F.R. § 241.13(i)(2). This Court construes respondents' failure to address these arguments as a concession to these arguments. See Siang v. Chiang, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as s concession to petitioner's argument).[3]

1. Changed Circumstances

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025)

---

[2] Respondents did not provide a copy of the Revocation of Release. (See ECF No. 8.)

[3] This Court recognizes that petitioner appears to have a criminal history dating back to 2014. (ECF No. 8 at 9.) Because this Court finds that ICE has failed to establish changed circumstances and failed to follow its own regulations, the Court does not reach whether ICE lawfully revoked petitioner's Order of Supervision based on any violation of his conditions of release. The government may revoke petitioner's supervision and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. As discussed above, respondents do not address this claim and, thus, failed to meet their burden of demonstrating changed circumstances indicating a significant likelihood of removal.

2. Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025). Petitioner claims that ICE failed to notify him of the reasons for the revocation of his release. (ECF No. 1 at 16-17.) As discussed above, by failing to address this claim, respondents concede petitioner's argument.

Petitioner also claims that he did not receive a prompt informal interview following his re-detention. (Id. at 17.) Section 241.13(i)(3) requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows

there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." As discussed above, by failing to address this claim, respondents concede petitioner's argument.

The Court finds that respondents violated their own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. Respondents' failure to notify petitioner of the reasons for revocation beyond "changed circumstances" and failure to provide petitioner with a prompt interview following his re-detention violated 8 C.F.R. § 241.13(i)(3). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

3. Due Process

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is

the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents identify no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" were not provided to petitioner as required by their own regulations. See 8 C.F.R. § 241.13(i)(3).

For the reasons above, this Court recommends that the petition be granted as to claim four alleging that petitioner's re-detention is unlawful because the government failed to demonstrate changed circumstances establishing a significant likelihood of petitioner's removal to Iraq in the reasonably foreseeable future, and because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

///

**B. Claims Two and Three: Third Country Removal Claims**

In claim two, petitioner argues that third country removal policies violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations and the Administrative Procedures Act. (ECF No. 1 at 14-15.) In claim three, petitioner argues that punitive third country banishment violates the Fifth and Eighth Amendments. (Id. at 15-16.) In the opposition, respondents argue that "[a]ll petitioner offers is a boilerplate pleading arguing against third-country removal but offering no substantive facts as to why removal is not likely to occur." (ECF No. 8 at 3.) For the following reasons, this Court finds that petitioner lacks standing to raise his claims challenging third country removal policies and procedures.

To establish Article III standing, a party must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The petition appears to be a form petition and the record before the Court does not indicate that third country removal is currently at issue. (See ECF Nos. 1, 8, 9.) Because nothing before the Court shows any basis for petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third country removal claims at this time, and those claims should be denied.

**C. Petitioner's Other Claims for Relief**

Because the Court recommends granting the petition based on claim four for the reasons discussed above, the Court need not address any additional claims raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to claim four.

///

///

**D. Remedy**

Based on the recommendation that the petition be granted as to claim four, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy"). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the July 8, 2021 Order of Supervision before his re-detention on April 6, 2026.

## V. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends the petition be granted and petitioner be released, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is denied without prejudice; and

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to claim four (due process and regulatory violation) and DENIED as to the remaining claims.
2. Petitioner Khalil Fahad (A-212-400-130) be immediately released from ICE custody under the same conditions he was previously released in his July 8, 2021 Order of Supervision. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional

protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures. Because petitioner is proceeding pro se, respondents be further directed to file a status report within seven (7) days from the date of his release.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 26, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Faha5659.imm.157.release/2